Prior to the Full Commission review, plaintiff submitted motions on July 13, 1999 requesting that Dr. Leonard Nelson be designated as treating physician to replace Dr. Samuel K. St. Clair and that additional treatment in the form of chiropractic care by Cecil Walker, C.D. be provided by defendants. These motions were held in abeyance by former Chairman Howard J. Bunn, Jr.
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stanback, the briefs and the arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing and in a Pre-Trial Agreement dated July 20, 1998, as,
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and the North Carolina Industrial Commission has jurisdiction over the parties and over the subject matter of this action.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. In addition to the other stipulations contained herein, the parties stipulate and agree with respect to the following undisputed facts:
a. On or about January 4, 1997, the Town of Warrenton employed three (3) or more employees, and it and its employees were bound by and subject to the provisions of the North Carolina Workers Compensation Act.
b. On or about January 4, 1997, an employee/employer relationship existed between David Lynch and the Town of Warrenton.
c. On or about January 4, 1997, the Town of Warrenton was insured by Hartford Specialty Risk Services, Inc. with regard to workers compensation insurance coverage for its employees.
d. Plaintiff sustained an injury by accident to his back and right leg arising out of and in the course of his employment on or about January 4, 1997.
e. Plaintiff has been paid temporary total disability benefits from April 24, 1997 to July 27, 1997.
4. The following is a list of Stipulated Exhibits admitted into evidence: Stipulated Exhibit #1 Industrial Commission Forms/Various Motions and Orders and Stipulated Exhibit #2 Plaintiffs Medical Records.
5. Following the hearing before Deputy Commissioner Stanback, the depositions of Cecil Walker, D.C., Samuel K. St. Clair, M.D., and Leonard D. Nelson, Jr., M.D. were taken and received into evidence.
***********
Based upon all of the competent evidence of record, the Full Commission adopts the findings of fact found by the Deputy Commissioner and finds as follows
 FINDINGS OF FACT
1. At the time of the hearing before Deputy Commissioner Stanback, plaintiff was a forty-eight (48) year old male who had been employed by defendant-employer for approximately fifteen (15) years prior to his injury by accident on January 4, 1997. At the time of his injury, he was employed as a laboratory supervisor.
2. On January 4, 1997, plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of his employment with defendant-employer. Plaintiff and a fellow employee were attempting to dislodge a sewage gate with an iron bar which gave way suddenly, resulting in injury to plaintiffs back and right leg. The claim was accepted as compensable, pursuant to a Form 21 Agreement, and plaintiff received temporary total disability benefits from April 24, 1997 to July 27, 1997.
3. Plaintiff was seen initially for this injury by Cecil Walker, D.C. in Louisburg, North Carolina. Dr. Walker treated plaintiff from March 27, 1997 until April 30, 1997 when he referred plaintiff to Dr. Samuel K. St. Clair; a neurosurgeon, due to plaintiffs continued low back pain. During his course of treatment with Dr. Walker, plaintiff made no complaints of left leg pain.
4. On May 1, 1997, plaintiff was examined by Dr. St. Clair and an MRI performed on that date showed a right L4-5 disc herniation. Dr. St. Clair recommended surgery, however, prior to the surgery even being performed, plaintiff expressed the opinion that he was not sure if he could ever work again. Additionally, prior to the surgery, when plaintiff was told that he would remain out of work for six to eight weeks, plaintiff responded by requesting ten to twelve weeks out of work.
5. Plaintiff underwent a lumbar laminotomy and diskectomy on May 14, 1997. Immediately following the surgery, plaintiff complained of left leg pain and numbness. Plaintiff tolerated the surgical procedure with no complications and was discharged from the hospital on May 15, 1997.
6. On June 11, 1997, plaintiff returned to Dr. St. Clairs office complaining of recurrent back pain and bilateral leg pains. Dr. St. Clair attempted to set up diagnostic tests immediately in order to determine the etiology of plaintiffs pain, however, plaintiff requested that the tests be delayed for two weeks. This requested delay caused Dr. St. Clair some concern. The diagnostic tests, including an MRI scan, were eventually completed on June 23, 1997, the results of which revealed no left-sided abnormalities.
7. On July 7, 1997, based upon plaintiffs continued complaints of left hip and buttock pain, Dr. St. Clair referred plaintiff to Dr. Leonard Nelson at Raleigh Orthopaedic Clinic for further evaluation. Plaintiff was not very cooperative during the examination and complained of pain with practically any movement. Dr. Nelsons examination revealed no abnormalities in plaintiffs left hip.
8. On July 23, 1997, Dr. St. Clair released plaintiff to return to work with a three week, fifteen-pound lifting restriction. Plaintiff returned to work for the defendant-employer on July 28, 1997 and worked at the same wages he was earning at the time of his injury until mid-October. Plaintiff then accepted a position with another employer at wages greater than or equal to those he was earning with the defendant-employer.
9. Plaintiff continued to complain of left leg and/or left posterior iliac pain during his next few visits with Dr. St. Clair. Plaintiffs last visit with him was October 29, 1997, at which time plaintiffs only complaint was left posterior iliac discomforts.
10. Dr. Walker opined that plaintiffs injury by accident of January 4, 1997 could have caused pain in plaintiffs back and both legs, even though plaintiff never made any left-sided complaints of pain during his treatment with Dr. Walker.
11. Dr. St. Clair opined that plaintiffs left side pain was not related to his back or to his workers compensation injury. Dr. St. Clair was not able to identify anything objective from a neurological or orthopedic standpoint to explain plaintiffs pain. When asked if something could have occurred during surgery to prompt plaintiffs left side pain, Dr. St. Clair responded that the surgery was completely isolated to the right-hand side. No visualization was made for exposure of the left-hand side and Dr. St. Clair ordered a post-op scan to see if there was any migration of disk material from the right side but there was none. Additionally, the surgery was performed with plaintiff in a prone or face down position so that there was no pressure on the back of plaintiffs hip or his sides.
12. Dr. Nelson, who saw plaintiff one time, opined that plaintiffs pain on the left could have or might have been related to his back and the injury by accident of January 4, 1997, however he also felt that plaintiff was grossly exaggerating his pain or possibly even malingering. Dr. Nelson additionally indicated that it would be extremely difficult for the surgery to cause plaintiffs pain since Dr. St. Clair did not get close to the left side of plaintiffs back during surgery.
13. Greater weight is assigned to the opinions of Dr. St. Clair as to the origin of plaintiffs left side back and leg pain. Of plaintiffs medical care providers, Dr. St. Clair treated plaintiff over the longest period of time and was most familiar with his medical condition.
14. The greater weight of the medical evidence in this matter does not establish that plaintiffs left side pain complaints were related to his original back injury of January 4, 1997 or to his surgery of May 14, 1997. Therefore, plaintiff is not entitled to workers compensation benefits relating to his left side complaints.
15. According to the Form 22 admitted into evidence, plaintiffs average weekly wage is $333.34, yielding a compensation rate of $222.24.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission concludes as follows
 CONCLUSIONS OF LAW
1. On January 4, 1997, plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of his employment with defendant-employer, resulting in injury to plaintiffs back and right leg. G.S. 97-2(6).
2. Plaintiffs left leg complaints are not causally related to his admittedly compensable injury by accident of January 4, 1997. Therefore, plaintiff is not entitled to workers compensation benefits associated with those complaints. G.S. 97-2.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission adopts the holding of the Deputy Commissioner and enters the following
 ORDER
1. Under the law, plaintiffs claim for additional workers compensation benefits must be and the same is, DENIED.
2. Plaintiffs motion to designate Dr. Nelson as the treating physician is hereby Granted. However, plaintiffs motion for additional chiropractic treatment with Cecil Walker is hereby denied at this time as plaintiff has not had time to benefit from Dr. Nelsons care and recommendations.
3. Each side shall bear its own costs.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/_____________ THOMAS J. BOLCH COMMISSIONER
S/_______________ CHRISTOPHER SCOTT COMMISSIONER
DCS: nwg